# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.

MAO-MSO RECOVERY II, LLC,
a Delaware entity; MSP RECOVERY, LLC,
a Florida entity; MSPA CLAIMS 1, LLC, a
Florida,

      Plaintiff,

vs.
                                      **CLASS REPRESENTATION**

BOEHRINGER INGELHEIM ,
PHARMACEUTICALS, INC., BOEHRINGER
INGELHEIM PHARMA GMBH & CO., KG,
BOEHRINGER INGELHEIM INTERNATIONAL
GMBH, BIDACHEM S.P.A., PROVIDIO, LLC
PROVIDIO MEDISOLUTIONS, LLC

      Defendants.
_____/

## COMPLAINT

Plaintiffs, MAO-MSO Recovery II, LLC, MSP Recovery, LLC and MSPA Claims 1, LLC,

(hereinafter referred to as "Plaintiff"), on behalf of itself and all other similarly situated Medicare

Advantage Organizations and their assignees, through undersigned counsel, hereby bring this

action against Defendants, Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim

Pharma GMBH & Co., KG, Boehringer Ingelheim International GMBH, Bidachem S.P.A.,

Providio, LLC and Providio Medisolutions, LLC (collectively "Defendants") and state as follows:

## I.   <u>NATURE OF THE ACTION</u>

Plaintiff, as assignee of a Health Maintenance Organization ("HMO") and Medicare Advantage ("MA") Plan[1], sues Defendants to enforce its direct rights of recovery, subrogation rights, and/or recovery and reimbursement rights for the medical payments made as a secondary payer.

As a secondary payer[2], Plaintiff seeks to recover from Defendants, as primary plans[3], reimbursement of all sums, on a fee-for-service basis, that Plaintiff's assignor HMO/Medicare Advantage Organization ("MAO") was billed for medical care and treatment rendered on behalf of its MA enrollees, for which Defendants are responsible as primary payers, along with double damages for Defendants' failures to properly reimburse Plaintiff.

Plaintiff seeks reimbursement for the medical services and/or supplies that were paid by its assignor to treat the injuries suffered by its enrollee as a direct result of the blood thinner product manufactured, marketed, and/or distributed by the Defendants. Plaintiff's causes of action arise from the Defendants' failure and refusal to reimburse Plaintiff for medical expenses paid on behalf of enrollees, for which Defendants are the responsible entities. The claims herein became vested with Defendants' settlement of the Multi-District Litigation case styled *In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL Docket No. 2385, a federal multi-

---

[1] The terms "MA Plan" and/or "HMO" refer to Plaintiff, MSP Recovery, LLC as the assignee of the rights of a Medicare Advantage Organization.

[2] **Secondary payer**, in the context of Medicare benefits, means medical coverage benefits that are payable only to the extent that payment has not been made and cannot reasonably be expected to be made under other coverage that is primary to Medicare.

[3] **Primary plan**, in the context of Medicare as a secondary payer, are defined as worker's compensation plans, group health plans, liability insurance policies or plans (including self-insured plans or tortfeasor) and no-fault insurance, § 1395y(b)(2)(A)(ii).

district litigation brought in the United States District Court for the Southern District of Illinois (the "MDL Proceedings").

Plaintiff's assignor contract with the Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits for Medicare beneficiaries who elect to receive their benefits from a Medicare Advantage Plan pursuant to Medicare Part C. As assignees of several Medicare Advantage Organizations ("MAOs"), Plaintiff's rights arise through the payments made by the MAOs as secondary payers for which Defendants are primarily responsible as a result of the settlement of the MDL Proceedings.

## II.   JURISDICTION, PARTIES AND VENUE

1.      This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00).

2.      MAO-MSO Recovery II, LLC is a Delaware entity, with its principal place of business located at 45 Legion Drive, Cresskill, New Jersey 07626. MAO-MSO Recovery II, LLC is a citizen of the State of Delaware and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

3.      MSP Recovery, LLC is a Florida entity, with its principal place of business located at 5000 SW 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery, LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of

Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

4.      Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPA Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

5.      At all material times related to the events set forth in this Complaint, the purported class members contracted with CMS to administer Medicare benefits for Medicare beneficiaries who elect to enroll in Medicare Advantage ("MA" or "Medicare Part C").

6.      Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., ("BIP"), is a foreign corporation organized under the laws of the State of Delaware with its principal place of business in 900 Ridgebury Road, Ridgefield, Connecticut. BIP is authorized to conduct business in the State of Florida and maintains agents to transact its customary business in Florida.

7.      Defendant, Boehringer Ingelheim Pharma GMBH & Co. KG ("BIPG"), is a foreign corporation with its principal place of business in Binger Strasse 173, 55216 Ingelheim am Rhein, Germany. BIPG transacts and conducts business in the state of Florida and Connecticut and derives substantial revenue from its business and contacts with the State of Florida.

8.      Defendant, Boehringer Ingelheim International GMBH ("BII"), is a foreign corporation with its principal place of business in Binger Strasse 173, 55216 Ingelheim am Rhein,

Germany. BII transacts and conducts business in the state of Florida and Connecticut and derives substantial revenue from its business and contacts with the State of Florida.

9.      Defendant, Bidachem S.P.A. ("Bidachem"), is a foreign corporation with its principal place of business in Strada Statale 11. (Padana Sup.) N.8, 24040 Fornovo S. Giovanni, Bergamo, Italy. Bidachem transacts and conducts business in the state of Florida and Connecticut and derives substantial revenue from its business and contacts with the State of Florida.

10.     Defendant, Providio, LLC and Providio Medisolutions, LLC (collectively "Providio"), are foreign corporations with their principal place of business in 5613 DTC Parkway, Suite 700, Greenwood Village, CO 8011 and its Primary Lien Handling Office in 711 York Road, 2nd Floor, Willow Grove, Pennsylvania.  Providio transacts and conducts business in the state of Florida and derives substantial revenue from its business and contacts with the State of Florida.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction).

12.     Plaintiff brings this action pursuant to the Medicare Secondary Payer Act, 42 U.S.C § 1395y(b), more specifically 42 U.S.C § 1395y(b)(3)(A), which creates a private cause of action for double damages when a primary plan fails to provide for primary payment in accordance with 42 U.S.C § 1395y(b)(1) and (b)(2)(A).

13.     Defendants are responsible, as primary payers[4], for any bills for medical services and/or supplies incurred by individuals injured by Defendants' products. Defendants demonstrated their responsibility for said medical bills as a result of their settlement of the MDL Proceedings.

---

[4] **Primary payer**, when used in the context of Medicare as a secondary payer, means any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a primary plan. These entities include, but are not limited to, insurers, self-insurers, tortfeasor, third party administrators, and all employers that sponsor or contribute to group health plans or large group health plans.

14.     As an HMO, Plaintiff's assignor provided Medicare benefits to its enrollees and participants pursuant to health plans, i.e., "Evidence of Coverage" - the term used in the industry- in compliance with CMS requirements and standards. All funds utilized to service the needs, and otherwise pay for medical services and supplies, of the Medicare beneficiaries enrolled in MAOs come directly from the Medicare Trust Fund.

15.     Plaintiff's' assignor is a secondary payer pursuant to the Medicare Secondary Payer Act ("MSP") and its corresponding regulations.  42 U.S.C. §§ 1395w-22(a)(4).

16.     Venue is proper in the Southern District of Florida because it is the district in which the cause of action accrued.

17.     Plaintiff complied with all conditions precedent prior to the filing of this suit.

### III.     LEGAL BACKGROUND

#### A.     The Medicare Act

18.     The federal Medicare program began with the 1965 enactment of Title XVIII of the Social Security Act. 42 U.S.C. § 1395, et seq. (the "Medicare Act") and is a system of federally funded health insurance that pays medical treatment costs for individuals over 65 years of age, certain disabled persons, and persons with End Stage Renal Disease. See 42 C.F.R. § 408.10, et seq. (2006). Medicare is a complex federal program that insured over 53 million Americans in 2014 with total expenditures of $613.3 billion.[5]

19.     Today, Medicare benefits are divided into four parts:

(1) Medicare Part A, 42 U.S.C. § 1395c, et seq., provides coverage for costs of inpatient hospital services and is available without payment of premiums to most persons who paid Medicare payroll taxes prior to becoming Medicare-eligible;

---

[5] *See* 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, p. 7.

(2) Medicare Part B, 42 U.S.C. § 1395j, et seq., funded through premiums and general revenue, is a voluntary program in which the beneficiary pays premiums to Medicare, and in return Medicare pays the costs of his or her medically-necessary outpatient services, such as doctors' office visits;

(3) Medicare Part C, 42 U.S.C. § 1395w-21(a)(1), permits individuals eligible for Medicare to elect to receive their Medicare benefits through enrollment in a Medicare Advantage Organization;

(4) Medicare Part D, 42 USCS § 1395w-101 et seq., provides voluntary prescription drug coverage to Medicare enrollees; and

(5) Medicare Part E, 42 U.S.C. §§ 1395x – 1395y, contains definitions and general provisions applicable to the entire Medicare program. The Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), is codified in Part E.

## B.    Medicare Advantage

20.    The Balanced Budget Act of 1997, Pub. L. 105-33, established the "Medicare+Choice" program, later renamed "Medicare Advantage," by adopting a new "Part" to Medicare Part C,[6] giving Medicare enrollees the option to receive their Medicare benefits from private health plans.[7]   Congress adopted Part C to "enable the Medicare program to utilize innovations that helped the private market contain costs and expand health care delivery options." HOUSE CONF. REP NO. 105-217, at 585 (1997), reprinted in 1997 U.S.C.C.A.N. 205-06.

21. Under the Medicare Advantage program, CMS pays MAOs a fixed amount (i.e., a capitation) for each enrollee and delegates to the MAOs the obligation to administer, pay, and assume all Medicare economic risk for the Medicare benefits provided to Part C enrollees, pursuant to the requirements of Title XVIII and CMS Medicare regulations. *See* 42 U.S.C. § 1395w-23(a)(1)(A); 42 C.F.R. § 422.268.

---

[6] The governing provisions of Medicare Part C were incorporated into the Medicare Act at 42 U.S.C. §§ 1395w-21-1395w-28.

[7] Private health plans have been a part of Medicare since 1972, Pub. L. 92-603, Medicare Act at 42 U.S.C. § 1395mm.

C.     **The Medicare Secondary Payer Act**

22.     Before 1980, Medicare generally paid for its enrollees' medical services, regardless of whether another insurer or tortfeasor was legally responsible to do so.

23.     In 1980, in response to skyrocketing costs, Congress enacted the first in a series of amendments that shifted Medicare costs to other payers. Those amendments, along with their respective enforcement provisions, now collectively comprise the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b). In summary, the MSP Act,

> [m]akes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer . . . In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay. . . . The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her.

*Cochran v. U.S. Health Care Fin. Admin.,* 291 F.3d 775, 777 (11th Cir. 2002).  The primary intent underlying the MSP Act is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the cost of the Medicare program.

24.     Under the Act, payment for treatment of a Medicare beneficiary, whether covered under Part A, B, C, or D, is "conditional" or "secondary," whenever there is a primary plan. A primary plan must either pay first for that treatment or else later reimburse the Medicare secondary payer for its conditional expenditure. 42 U.S.C. § 1395y(b)(2). A tortfeasor that self-insures and "carries its own risk" for liability, is a "primary plan" under the MSP. 42 U.S.C. § 1395y(b)(2)(A), while an MAO is a "secondary payer." 42 U.S.C. § 1395w-22(a)(4).

25.     A primary plan's reimbursement responsibility under the Act is "demonstrated by . . . a payment conditioned upon the recipient's . . . release . . . of . . . a claim against the primary plan." 42 U.S.C. § 1395y(b)(2)(B)(ii). Thus, a tort settlement in favor of a Medicare enrollee or

any settlement payment to a claimant who is a Medicare enrollee triggers the tortfeasor's (or its liability insurer's) reimbursement obligation.

26.     In 1997, when Congress established what is currently Medicare Part C, it gave MAOs the right to charge primary plans to recover secondary payments, and specifically cross referenced the Act:

> (4) Organization as secondary payer
>
> Notwithstanding any other provision of law, a [Medicare Advantage] organization may (in the case of the provision of items and services to an individual under a [Medicare Advantage] plan under circumstances in which payment under this title is made secondary pursuant to section 1395y(b)(2)) of this title charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.
> 42 U.S.C. § 1395w-22(a)(4).

27.     Part C of the Medicare Act expressly incorporates the MSP Act into the MA program, authorizing an MAO to charge a primary plan or an individual that was paid by a primary plan "under circumstances in which payment under this title is made secondary pursuant to" the MSP Act. 42 U.S.C. § 1395w-22(a)(4). In doing so, Congress expressed its understanding and intention that the MSP Act applied to Medicare Part C.

28.     The MSP Act creates a federal coordination of benefits scheme by defining a "primary plan" to include tortfeasor.[8]

---

[8] § 1395y(b)(2)(A)(ii) - In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no

29.     Payments by an MAO are made conditionally, regardless of whether primary liability was established at the time of conditional payment[9], when an MAO makes a payment for medical services that are the responsibility of a primary plan under the MSP law.

30.     CMS interprets the MSP Act to apply to MAOs. "The MA organization will exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). A medical provider or a similarly situated entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for conditional Medicare payments.

31.     CMS further explained that the regulation assigns MAOs "the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

32.     The MSP law makes clear that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

33.     The enforcement provision of the MSP Act authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP Act. 42 U.S.C. § 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided." *Id*.

---

fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

[9] 42 C.F.R. § 411.21 – Conditional Payment – Means a Medicare payment for services for which another pays is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed.

34.     The Medicare Secondary Payer Act creates a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which *fails* to provide for primary payment (or appropriate reimbursement).[10]

35.     The courts recognize such a private cause of action under the MSP Act, where liability is established by a separate adjudication or agreement.  In other words, such liability on the part of a primary plan, can be established by a judgment, ***settlement***, or by other means.[11]

## D.       The SCHIP Extension Act of 2007 (MMSEA)

36.     Settling parties are under an obligation to report under Section 111 of the MMSEA. 42 U.S.C. § 1395y(b)(8). This provision requires liability insurers, including self-insured plans, such as Defendants in the MDL Proceedings, to report to Medicare the details of settlements, judgments, awards or other payments made to Medicare recipients, including Medicare Part C and D recipients. Congress enacted this provision in order to curtail the widespread cheating that was costing the Medicare program, and MAO plans, hundreds of millions of dollars each year.

37.     The United States Court of Appeals for the Eleventh Circuit and the Third Circuit held that if a primary plan does not fulfill its payment obligations, either Medicare, a contracted

---

[10] 42 U.S.C. § 1395y(b)(3).

[11] *See Humana Medical Plan, Inc., v. Western Heritage Insurance Company*, Case No. 15-11436 (11th Cir. 2016); *Glover v. Ligett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (*citing* 42 U.S.C. § 1395y(b)(3); § 1395y(b)(2)(B)(ii)); *see MSP Recovery, LLC v. Allstate,* 2016 BL 282030 (11th Cir, Aug. 30, 2016) Some Courts in this District also followed this decision, see *Humana Medical Plan, Inc. v. Western Heritage Insurance Company*, 1:12-cv-20123-MGC (S.D. Fla. 2012); *MSP Recovery, LLC v. Allstate Insurance Company*, 1:15-cv-20732-RNS; 2015 U.S. Dist. LEXIS 130834 (S.D. Fla. Sept. 21, 2015); *MSP Recovery, LLC v. Progressive Select Insurance Company*, 1:15-cv-20208-UU; 96 F. Supp. 3d 1356 (S.D. Fla. Apr. 2, 2015); *MSP Recovery, LLC v. Progressive Select Insurance Company,* No. 1:15-cv-20616-FAM; 2015 U.S. Dist. LEXIS 134484 (S.D. Fla. May 18, 2015); and *MSP Recovery, LLC v. Allstate Insurance Company*, 1:15-cv-20788-PAS (S.D. Fla. June 24, 2015).

MAO or its contracted payer or full risk provider, may make payment conditioned on reimbursement[12], and if a conditional payment is made, the primary plan must reimburse the secondary payer. These recovery rights, however, are worthless if MAOs are unable to identify primary payments when they happen. *Cf. United States v. Baxter Int'l., Inc.,* 345 F. 3d 866 (11th Cir. 2003) (describing why traditional Medicare cannot more fully allege its reimbursement claims in a mass tort settlement, including that all of the information needed to assert claims is in the exclusive possession of the settling parties). In the *Avandia* case, for example, the MAO was obligated to pursue the identity of settling MAO plan members through lawsuits in federal and state court, extensive data mining, and the review of all relevant public filings—an extremely expensive, burdensome, and time-consuming process. Section 111 of the MMSEA was designed to end that.

## IV.   STANDING

### *Plaintiff's Direct Right of Subrogation and their Assignments*

38.     Plaintiff's assignors exercise the same rights to recover from a primary plan, entity or individual that CMS exercises under the MSP regulations.

39.     As such, once Plaintiff's assignor provides payments in situations where it is deemed a secondary payer, Plaintiff's assignors are automatically subrogated the right to recover reimbursement from the primary plan.

40.     Plaintiff's assignor has a direct statutory and regulatory right of action to recover from any primary plan, such as Defendants. *See* 42 U.S.C. 1395y(b)(3).

41.     Accordingly, Plaintiff's assignor has standing to assert its subrogation rights

---

[12] *See Humana Med. Plan v. W. Heritage Ins. Co.*, No. 15-11436, 2016 U.S. App. LEXIS 14509, at *20 (11th Cir. Aug. 8, 2016) and *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012).

against Defendants, the primary payers in these instances.

42.     Pursuant to valid assignment agreements, Plaintiff's assignor assigned all of its direct rights of recovery, subrogation rights, and/or recovery and reimbursement rights to Plaintiff.

43.     Plaintiff possesses all of Plaintiff's assignor's recovery claims and subrogation rights, and is therefore entitled to pursue and recover any and all medical claims, bills, and expenses provided by Plaintiff's assignor on behalf of its MA Enrollees, from and against any entity that is liable as a primary payer, including the Defendants.

44.     Accordingly, Plaintiff maintain the requisite standing to maintain this cause of action.

## V.     BACKGROUND FACTS AND GENERAL ALLEGATIONS

45.     Defendants designed, manufactured, marketed, distributed, tested, labeled and/or sold Pradaxa as a blood thinner used to treat and reduce the risks of stroke and blood clots in persons with atrial fibrillation ("AF") not caused by a heart valve problem.

46.     In 2010 the Defendants introduced Pradaxa to the North American market. Subsequently in October 2010, the Food and Drug Administration ("FDA") approved the drug to prevent strokes and blood clots.

47.     Defendants marketed Pradaxa as treatment for AF stating that the condition was not a "directly" life threatening condition, but at the same time stating in their marketing materials that AF can have serious and deadly consequences for patients.

48.     Defendants claimed that Pradaxa was a better alternative to traditional blood thinners, such as warfarin (Coumadin) in response to growing occurrences of strokes and blood clots.

49.     Unlike the traditional drug warfarin, Pradaxa was approved as a one size fits all

twice a day dose. The main difference between Pradaxa and warfarin is that Pradaxa did not require individual and constant physician monitoring.

50.     Defendants conducted clinical trials of Pradaxa and promoted the claim that Pradaxa was much safer as compared to warfarin with lower risks of internal bleeding. As a result of Pradaxa's defects, patients who were prescribed Pradaxa, even for a brief period of time, were at increased risk of developing life threatening bleeding. As a result of Pradaxa's defective, one size fits all formula, there was increased difficulty in assessing its level in the blood, which further increased the lethality, as bleeds cannot be stopped since there is no known treatment to reverse the drug's dangerous effects.

51.     The clinical trials actually revealed a higher risk of bleeding in older patients.

52.     As a result of increased deaths in patients taking Pradaxa, on December 7, 2011, the FDA opened an investigation into the trial and drug itself.

53.     Moreover, Defendants set about to conceal their knowledge that Pradaxa caused life threatening bleeding, from patients, consumers and the medical community. In fact the warning labels on Pradaxa packaging fail to warn of the irreversible nature of Pradaxa bleeds.

54.     As a result, several Medicare Advantage Plan Enrollees ("Enrollees") suffered bodily injuries from adverse effects associated with the intended use of Pradaxa which required medical care and treatment.

55.     Enrollees received medical services, treatment, and/or supplies for the injuries caused by the use of Pradaxa.

56.     At the time of the medical services rendered, Enrollee was a member of an MAO which assigned its recovery and reimbursement rights to Plaintiff.

57.     A large volume of medical bills charged to the Class Member MAOs were the result

of the injuries sustained by the Enrollees due to the use of Pradaxa, which required medical diagnosis and treatment.

58.     Enrollees' MAOs, Class Members, are the "secondary payer" in connection with the medical expenses incurred by the Enrollees related to the use of Pradaxa and the life-threatening bleeding it caused. The subject MAOs and Plaintiff, as assignees, are entitled to reimbursement, recovery and subrogation rights from any "primary plan" responsible for Enrollees' medical expenses.

59.     Numerous lawsuits were brought against the Defendants seeking damages arising from the use of, and caused by, Pradaxa and the cases were transferred to the United States District Court for the Southern District of Illinois for handling as MDL Proceedings.

60.     The applicable enrollees suffered injuries as a result of taking Pradaxa.

61.     Each applicable enrollee sought medical attention for those injuries, and MAOs paid for Each applicable enrollees' medical expenses.

62.     Each applicable enrollee filed a lawsuit against Defendants for the personal injury caused by Pradaxa.

63.     Plaintiffs have not been reimbursed by Defendants for the conditional payments made on behalf of each applicable enrollee.

64.     A Settlement Agreement dated May 28, 2014 was entered into by Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

65.     Pursuant to the Settlement Agreement and the MSP Act, Defendants have a legal obligation to make primary payment for the medical services provided to each applicable enrollee as a result of the Affected Products, or reimburse the MAOs, but Defendants failed to satisfy that

obligation.

66.     At the time of settlement Defendants were aware, or should have been aware, of their reimbursement obligations to pay for the injuries sustained by Each applicable enrollee because of the Affected Products.

67.     This settlement demonstrated Defendants' responsibility to reimburse MAOs and Plaintiff under the MSP Act. *See* 42 U.S.C. § 1395y(b)(2)(B).

68.     On August 13th, 2014, Defendant Providio was appointed by the MDL Court as the Administrator of the Qualified Settlement Fund ("QSF") and was given the authority to make distributions from the fund.  [A copy of the Order naming Providio as the QSF administrator is attached hereto as **Exhibit "A"**].

69.     As such, Defendants, the primary payers, were required to make appropriate reimbursement for the conditional Medicare benefits advanced by MAOs and Plaintiff on behalf of its Enrollee.

70.     Defendants violated their statutory obligations to ascertain and properly reimburse any MAOs for Medicare benefits rendered on Enrollees' behalf.  Defendants' settlement payments and resulting releases do not limit or alter Defendants' reimbursement obligations under the MSP Act and its corresponding federal regulations.

71.     Defendants failed to verify whether the Class Member MAOs and/or Plaintiff were entitled to any reimbursement or had any pending claims.  Defendants must reimburse Plaintiff even if it has already paid an applicable enrollee.  42 C.F.R. § 411.24(i)(1).

72.     On or about June 1, 2016, Plaintiff notified Defendants' representatives of its reimbursement rights with respect to its conditional payments of Medicare benefits.  [A copy of the Notice of Lien is attached hereto as **Exhibit "B"**].

73.     Despite knowledge of Plaintiff's rights to reimbursement, Defendants challenged Plaintiff's rights on the basis that all settlement proceeds had been distributed and refused to reimburse Plaintiff in accordance with the Settlement Agreement and in direct violation of the MSP Act.

74.     Plaintiff is entitled to recover double damages from Defendants (i.e., an amount double the amount otherwise provided) due to Defendants' failure to appropriately reimburse the Class Member MAOs and Plaintiff for its conditional payments made on behalf of Enrollees.  *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(3)(A).

## VI.     CLASS REPRESENTATION ALLEGATIONS

### FEDERAL RULE OF CIVIL PROCEDURE 23 REQUIREMENTS

75.     Plaintiff brings this suit both individually and, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Classes:

76.     The classes that Plaintiff seeks to represent is defined as follows:

Entities that contracted directly with the Centers for Medicare and Medicaid Services ("CMS") and/or their assignees pursuant to Medicare Part C, including but not limited to, MAOs and other similar entities, to provide Medicare benefits through a Medicare Advantage Plan to Medicare beneficiaries for medical services, treatment, drugs, and/or supplies ("Medicare Services"), as required and regulated by HHS and/or CMS, as a direct payer of Medicare Services on behalf of Medicare beneficiaries either for parts A, B and/or D, all of which pertain to the same Medicare Services that are the primary obligation of the Defendants; and

that have made payment(s) for Medicare Services, whereby, the MAO or its assignee, as a secondary payer, has the right and responsibility to obtain reimbursement for such Medicare Services.  Defendants are the primary payers as they are primarily responsible as a result of the settlement of the MDL Proceedings and have failed to reimburse, including but not limited to, the MAOs or their assignees.

77.     Federal Rule of Civil Procedure 23(a) states that a plaintiff may sue as a representative party on behalf of a class, if it establishes that:

    a.  the class is so numerous that joinder of all members is impracticable;

    b.  there are questions of law or fact common to the class;

    c.  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    d.  the representative party will fairly and adequately protect the interests of the class.

78.    The Class is properly brought and should be maintained as a class action under Rule 23(a), as:

    a.  **Numerosity:** joinder of all members is impracticable as there are over 600 MAOs and MA Plans (including the organizations that assigned their rights to Plaintiff) throughout the United States that made secondary payments for Pradaxa related injuries for its Enrollees. Thus, Plaintiff and the Class meet the numerosity requirement.

    b.  **Commonality:** Plaintiff and the Class Members have claims that raise common questions of law and/or fact. This is an action whereby the Plaintiff and Classes have claims that are based on the same theory of recovery (*i.e.*, that they are entitled reimbursement from Defendants for payments made on behalf of their enrollees). Each member of the Class, including Plaintiff, possesses the same rights to obtain recovery of its payments under the MSP Law. *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(2), 1395y(b)(3)(A); 42 C.F.R. §§ 422.108(f), 489.20(f)-(h), 411.24(h). Plaintiff's claim arises from the same practice or course of conduct that gave rise to the Class's claims. Plaintiff and the Class: (1) made secondary payments on behalf of its enrollees for Pradaxa related

medical treatment; (2) Defendants became primary payers by virtue of a settlement; (3) Defendants distributed payment from settlement funds to individuals without verifying and satisfying any existing Medicare and/or MAO liens; and (2) Class Members and Plaintiff was not reimbursed by the Defendants.

c. **Typicality:** Plaintiff's claims are typical for the Class, as Plaintiff and the Class are entitled to relief owing to Defendants' failure to reimburse the Class members (or their assignees), for payments made for the cost of their enrollees' medical items and services provided. Plaintiff seeks to recover the payments Defendants should have reimbursed to Plaintiff and the Class for their failure to appropriately reimburse Plaintiff and the Class when it received and distributed settlement payments. Defendants' bad acts and defenses are similar with respect to Plaintiff and the other members of the Class.

d. **Adequacy:** Plaintiff is a member of the Class as defined above. Plaintiff is committed to the active and vigorous prosecution of this action, and has retained competent counsel experienced in class action litigation. There is no hostility of interests between Plaintiff and the other members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action. Plaintiff has no claims that are antagonistic to the claims of the Class Members and/or claims it seeks to represent.

79.     In addition to satisfying Rule 23(a), Plaintiff must establish at least one (1) of three (3) subsections within Federal Rule of Civil Procedure 23(b):

1) the prosecution of separate claims or defense by or against individual members of the class would create a risk of either:

A.  inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

B.  adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

2)  the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate; or

3)  the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class **predominate** over any question of law or fact affecting only individual members of the class, and class representation is **superior** to other available methods for the fair and efficient adjudication of the controversy.

80.  This action is maintainable under Federal Rule of Civil Procedure 23(b)(3).

81.  The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because common issues of law and fact predominate over any questions affecting only individual members of the Class.

### VII.    CAUSES OF ACTION

### COUNT I
### BOEHRINGER INGELHEIM PHARMACEUTICALS INC.
**Private Cause of Action for Double Damages**
**[Pursuant to 42 U.S.C. § 1395y(b)(3)(A)]**

Plaintiff hereby incorporates by reference the allegations in paragraphs 1-80 as if fully set forth herein, and further alleges:

82.  Plaintiff's assignor and Class Members made secondary payments, as Medicare providers, for items and services provided to their Enrollees as a result of being prescribed and taking Pradaxa, in accordance with its contract with CMS.

83.     Pradaxa, is designed, manufactured, and sold by Defendant.

84.     The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act.  42 U.S.C. § 1395y(b)(3)(A).

85.     A Settlement Agreement dated May 28, 2014 was entered into by Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

86.     BIP's responsibility to pay for Enrollees' medical expenses is demonstrated by "a separate adjudication or agreement" (i.e., a settlement agreement), when it entered into the agreement with Enrollees. This settlement agreement operated as a confession of judgment, and further satisfies any condition precedent to bringing this cause of action under the MSP Act, as interpreted by the Eleventh Circuit.[13]

87.     BIP negotiated a settlement with Enrollees relating to their injuries sustained as a result of Pradaxa and obtained a release of liability for itself, without consideration being made as to any Medicare benefits conditionally paid on Enrollees' behalf.  Defendant, BIP, failed to follow its obligations to make such reimbursements.

88.     By virtue of the settlement, BIP became the primary payer and the primary plan under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A).  As such, BIP was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiff's assignor and Class Members on behalf of Enrollee.

---

[13] *Glover v. Ligett Group, Inc*., 459 F.3d 1304, 1308 (11th Cir. 2006).  *Humana v. Western Heritage*, 832 F.3d 1229 (11th Cir. 2016).

89.     BIP must reimburse Medicare even if it already paid Enrollees. 42 C.F.R. § 411.24(i)(1).

90.     Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff is entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services, treatment and/or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment and/or supplies advanced on behalf of Enrollees by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A), reasonable attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

## COUNT II
### BOEHRINGER INGELHEIM PHARMA GMBH & CO. KG.
#### Private Cause of Action for Double Damages
#### [Pursuant to 42 U.S.C. § 1395y(b)(3)(A)]

Plaintiff hereby incorporates by reference the allegations in paragraphs 1-80 as if fully set forth herein, and further alleges:

91.     Plaintiff's assignor and Class Members made secondary payments, as Medicare providers, for items and services provided to their Enrollees as a result of being prescribed and taking Pradaxa, in accordance with its contract with CMS.

92.     Pradaxa, is designed, manufactured, and sold by Defendant, Boehringer Ingelheim Pharma GMBH & Co. KG ("BIPG").

93.     The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act.  42 U.S.C. § 1395y(b)(3)(A).

94.     A Settlement Agreement dated May 28, 2014 was entered into by Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

95.     Defendant, BIPG's responsibility to pay for Enrollees' medical expenses is demonstrated by "a separate adjudication or agreement" (i.e., a settlement agreement), when it entered into the agreement with Enrollees. This settlement agreement operated as a confession of judgment, and further satisfies any condition precedent to bringing this cause of action under the MSP Act, as interpreted by the Eleventh Circuit.[14]

96.     BIPG negotiated a settlement with Enrollees relating to their injuries sustained as a result of Pradaxa and obtained a release of liability for itself, without consideration being made as to any Medicare benefits conditionally paid on Enrollees' behalf. BIPG failed to follow its obligations to make such reimbursements.

97.     By virtue of the settlement, BIPG became the primary payer and the primary plan under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A). As such, BIPG was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiff's assignor and Class Members on behalf of Enrollee.

98.     BIPG must reimburse Medicare even if it already paid Enrollees. 42 C.F.R. § 411.24(i)(1).

99.     Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff and Class Members are entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services,

---

[14] *Glover v. Ligett Group, Inc*., 459 F.3d 1304, 1308 (11th Cir. 2006).  *Humana v. Western Heritage*, 832 F.3d 1229 (11th Cir. 2016).

treatment and/or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment and/or supplies advanced on behalf of Enrollees by Plaintiff and Class Members.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Boehringer Ingelheim Pharma GMBH & Co. KG, for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A), reasonable attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

### COUNT III
### BOEHRINGER INGELHEIM INTERNATIONAL GMBH.
**Private Cause of Action for Double Damages**
**[Pursuant to 42 U.S.C. § 1395y(b)(3)(A)]**

Plaintiff hereby incorporates by reference the allegations in paragraphs 1-80 as if fully set forth herein, and further alleges:

100.    Plaintiff's assignor and Class Members made secondary payments, as Medicare providers, for items and services provided to their Enrollees as a result of being prescribed and taking Pradaxa, in accordance with its contract with CMS.

101.    Pradaxa, is designed, manufactured, and sold by Defendant, Boehringer Ingelheim International GMBH ("BII").

102.    The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act.  42 U.S.C. § 1395y(b)(3)(A).

103.    A Settlement Agreement dated May 28, 2014 was entered into by Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

104.    BII's responsibility to pay for Enrollees' medical expenses is demonstrated by "a separate adjudication or agreement" (i.e., a settlement agreement), when it entered into the agreement with Enrollees. This settlement agreement operated as a confession of judgment, and further satisfies any condition precedent to bringing this cause of action under the MSP Act, as interpreted by the Eleventh Circuit.

105.    BII negotiated a settlement with Enrollees relating to their injuries sustained as a result of Pradaxa and obtained a release of liability for itself, without consideration being made as to any Medicare benefits conditionally paid on Enrollees' behalf. BII failed to follow its obligations to make such reimbursements.

106.    By virtue of the settlement, BII became the primary payer and the primary plan under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A). As such, BII was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiff's assignor and Class Members on behalf of Enrollee.

107.    BII must reimburse Medicare even if it already paid Enrollees. 42 C.F.R. § 411.24(i)(1).

108.    Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff and Class Members are entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services, treatment and/or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment and/or supplies advanced on behalf of Enrollees by Plaintiff and Class Members.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Boehringer Ingelheim International GMBH, for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A), reasonable

attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

**COUNT IV**
**BIDACHEM, S.P.A.**
**Private Cause of Action for Double Damages**
**[Pursuant to 42 U.S.C. § 1395y(b)(3)(A)]**

Plaintiff hereby incorporates by reference the allegations in paragraphs 1-80 as if fully set forth herein, and further alleges:

109.     Plaintiff's assignor and Class Members made secondary payments, as Medicare providers, for items and services provided to their Enrollees as a result of being prescribed and taking Pradaxa, in accordance with its contract with CMS.

110.     Pradaxa, is designed, manufactured, and sold by Defendant, Bidachem S.P.A. ("Bidachem").

111.     The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act.  42 U.S.C. § 1395y(b)(3)(A).

112.     A Settlement Agreement dated May 28, 2014 was entered into by Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

113.     Bidachem's responsibility to pay for Enrollees' medical expenses is demonstrated by "a separate adjudication or agreement" (i.e., a settlement agreement), when it entered into the agreement with Enrollees. This settlement agreement operated as a confession of judgment, and further satisfies any condition precedent to bringing this cause of action under the MSP Act, as interpreted by the Eleventh Circuit.

114.     Bidachem negotiated a settlement with Enrollees relating to their injuries sustained

as a result of Pradaxa and obtained a release of liability for itself, without consideration being made as to any Medicare benefits conditionally paid on Enrollees' behalf. Bidachem failed to follow its obligations to make such reimbursements.

115.    By virtue of the settlement, Bidachem became the primary payer and the primary plan under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A). As such, Bidachem was required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiff's assignor and Class Members on behalf of Enrollee.

116.    Bidachem must reimburse Medicare even if it already paid Enrollees. 42 C.F.R. § 411.24(i)(1).

117.    Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff and Class Members are entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services, treatment and/or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment and/or supplies advanced on behalf of Enrollees by Plaintiff and Class Members.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Bidachem S.P.A., for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A), reasonable attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

<u>**COUNT V**</u>
<u>**PROVIDIO, LLC**</u>
<u>**PROVIDIO MEDISOLUTIONS, LLC**</u>
**Private Cause of Action for Double Damages**
**[Pursuant to 42 U.S.C. § 1395y(b)(3)(A)]**

Plaintiff hereby incorporates by reference the allegations in paragraphs 1-80 as if fully set forth herein, and further alleges:

118.    Plaintiff's assignor and Class Members made secondary payments, as Medicare providers, for items and services provided to their Enrollees as a result of being prescribed and taking Pradaxa, in accordance with its contract with CMS.

119.    The United States Congress "established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan that fails to provide for primary payment, or appropriate reimbursement" in accordance with the MSP Act.  42 U.S.C. § 1395y(b)(3)(A).

120.    A Settlement Agreement dated May 28, 2014 was entered into by the aforementioned Defendants whereby they agreed to settle pending litigation related to Pradaxa usage and acknowledging the claims for personal injuries related to Pradaxa.

121.    By the terms of the Settlement Agreement, the Defendants were to place the settlement funds into a QSF.  Providio was named the claims administrator and was responsible for the disbursement of the funds to claimants.

122.    By virtue of the settlement and its appointment as claims administrator of the QSF, Providio became the primary payer and the primary plan under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A). As such, Providio was required to make appropriate reimbursement (satisfy any outstanding liens) for the conditional Medicare benefits advanced by Plaintiff's assignor and Class Members on behalf of Enrollee.

123.    Providio must reimburse Medicare even if it already paid Enrollees. 42 C.F.R. § 411.24(i)(1).

124.    Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff and Class Members are entitled to recover double the amount from Defendants representing the: (a) the total amount of the fee-for-service expenses for medical services,

treatment and/or supplies that were rendered to Enrollees; or (b) the total amount of conditional payments for medical services, treatment and/or supplies advanced on behalf of Enrollees by Plaintiff and Class Members.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Providio, LLC, for double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A), reasonable attorney's fees, court costs, interests, and any other relief this Court deems just and proper.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

a. find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure and certify the respective Classes;

b. designate Plaintiffs as representatives for the respective Class and Plaintiffs' undersigned counsel as Class Counsel for the respective Class; and

c. issue a judgment against Defendants that:

i. grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

ii. grants Plaintiffs and the Classes alleged herein equitable relief by issuing an injunction ordering Defendants to comply with their statutory duties, lest Plaintiffs and the Class Members suffer irreparable future harm;

iii. grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.  grants Plaintiffs and the Class Members such other and further relief as

the Court deems just and proper under the circumstances.

## IX.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, MSP Recovery, LLC, hereby demands a trial by jury of all issues so triable.

Dated: 27 day of May, 2017.

Respectfully Submitted,

**MSP RECOVERY LAW FIRM**
5000 SW 75 Avenue, Suite 400
Miami, Florida 33155
Phone: (305) 614-2222
Serve: serve@msprecovery.com

By:  ____ /s/ *John H. Ruiz* _____
    John H. Ruiz, Esq., FL Bar No. 928150
    Frank C. Quesada, Fla. Bar No. 29411

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that on this the <u>27th</u> day of May, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF filing system.  We also certify that the forgoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Noticed of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

By: <u>     /s/ *John H. Ruiz*</u>